IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00460-REB-MJW

DIMAS ARMANDO DIAZ-HOLGUIN,

Petitioner,

v.

PETER KEISLER, et al,

Respondents.

---

**ORDER ON
PETITIONERS [sic] MOTION TO AMEND MEMORANDUM IN SUPPORT
(Docket No. 10)
and
RECOMMENDATION ON
RESPONDENTS' MOTION TO DISMISS (Docket No. 14)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter was referred to the undersigned by District Judge Robert E.

Blackburn by Order of Reference to United States Magistrate Judge issued on

March 11, 2008. (Docket No. 8).

This action was commenced on March 5, 2008, by the filing, through counsel, of

Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus and

Complaint for Declaratory and Injunctive Relief ("Memorandum"). (Docket No. 1). A

separate petition/application for writ of habeas corpus was not filed. Petitioner states in

that Memorandum that "[t]his Court has jurisdiction under 28 USC §2241(c)(1) and (3),

art I. §9, cl 2 of the United States Constitution ("Suspension Clause"), and 28 USC §

1331." (Docket No. 1 at 2). On April 3, 2008, petitioner, through counsel, filed

Petitioners [sic] Motion to Amend Memorandum in Support (Docket No. 10) in which

petitioner seeks leave of court pursuant to Fed. R. Civ. P. 15(a) or (d) to file an

amended Memorandum of Law in Support of Petition for Writ of Habeas Corpus

("Amended Memorandum") (Docket No. 11). Inasmuch as respondents had not yet

served a responsive pleading when the motion was filed, such amendment will be

permitted. Therefore, the operative "pleading" so to speak is the Amended

Memorandum (Docket No. 11). Petitioner has yet to file an actual petition/application

for writ of habeas corpus.

Now before the court for a report and recommendation is the respondents'

Motion to Dismiss (Docket No. 14) to which the petitioner, through counsel, filed a

response (Docket No. 25). The court has considered the Amended Memorandum, the

motion, the response thereto, the court's file, and applicable Federal Rules of Civil

Procedure, statutes, and case law. The court now being fully informed makes the

following findings, conclusions, and recommendation.

**Amended Memorandum.** The Amended Memorandum is hardly a model of

clarity or succinctness. Petitioner's allegations in that document include the following.

Petitioner, Dimas Armando Diaz-Holguin, was born in Mexico. Petitioner's wife is a U.S.

citizen, and he has four children who were all born in the United States. In 2004,

petitioner fell from a horse, resulting in permanent brain damage. A portion of his skull

had to be removed to allow the brain to swell. He later had reconstructive surgery to

repair his skull. He requires constant medication and is unable to care for himself.

In the opinion of petitioner's attorney, petitioner is an immigrant under the status

of a Legal Permanent Resident ("LPR") and may have had such status in the United States for over twenty years. Petitioner was arrested in Michigan in 1989. After being released, INS began proceedings and held that he was an aggravated felon. As a result, at that time he was ordered removed from the United States and allegedly was told he would be subject to a five-year bar for readmission. Petitioner remained physically present and resided in Mexico for over five years after that immigration proceeding. The U.S. Government never revoked or took possession of his LPR card.

In 1997, after the required waiting period, petitioner applied for admission by presenting himself at the border with his LPR card. He was taken to secondary inspection where he waited for an extended period of time. Eventually the border agent returned his LPR card, and petitioner was allowed to enter the United States. Petitioner made several other trips from the United States to Mexico, each time crossing the border at various U.S. inspection points, showing his LPR card when requested.

On February 22, 2008, petitioner was arrested at his house by immigration officers who stated that he was being arrested and would be deported because of a previous deportation order. Petitioner allegedly was never given any documentation explaining the charges, allegations, or any other information relating to his arrest, detention, and threatened immediate deportation.

Petitioner "is held by the Respondents, specifically the DHS, under the mandatory detention statutes of the INA, and without the opportunity to bail out of his incarceration and is held without an appropriate, individualized bond hearing, in which it may be demonstrated that he is neither a danger, nor flight risk. He has no effective remedy before the DHS, or the BIA, since these administrative bodies have shown

themselves to have predetermined the issue regarding mandatory detention and reinstatement of removal." (Docket No. 11 at 12, ¶ 20). He claims he "is being denied an opportunity to present a defense to deportation as DHS is preparing to remove him based solely on the deportation order that was entered in 1991. DHS appears to be ignoring or disregarding completely all the re-admissions and entries with inspection at the border as well as denying any relief based on changed circumstances or Petitioner's family or medical situation." (Docket No. 11 at 12, ¶ 21).

Petitioner raises the following three claims for relief: (1) as a result of the admission in 1997, he holds a status as a LPR and cannot be removed without judicial process; (2) under a recent United States Supreme Court decision petitioner may not be removed based on a drug possession conviction; (3) as a result of his accident, petitioner has suffered permanent brain damage, and the changed circumstances and his incapacity prohibit removal.

Petitioner seeks the following relief:

(1) Grant the writ of habeas corpus;

(2) Issue an order enjoining Respondents from removing this Petitioner from the jurisdiction while this Court retains jurisdiction and from applying this "no release", and "reinstatement" policy to Petitioner, thereby ordering them to conduct a prompt and individualized custody hearing in which it is not reasonable to assume that every person for which the DHS has an interest is a flight risk or immediately deportable; and which applies the appropriate standards of law to the assessments of that court of the least amount of money necessary to obtain the criminal defendant's return to that court for trial;

(4)[1] In the alternative, to treat this writ as a petition for review and grant

_____

[1]The Prayer for Relief jumps from enumerated request number two to number four.

review of the determinations made by the DHS with respect to removal of this Petitioner; barring removal of Petitioner or should it become necessary, as this court has the power under the All Writs Acts to order the DHS to provide a temporary parole, as provided by the INA for any appearances for the Court in the United States, even if necessary to a petitioner at the consulate in Ciudad Juarez, Mexico, so that he may appear before this court to give evidence of his disagreement with the prior deportation, and give evidence of his entitlement under the laws United States and the INA to adjust status to a [LPR] or otherwise reestablish his rightful status as an LPR.

(5) Grant any other and further relief, including, where necessary, strike those provisions of DHS statutory authority which conflict with the constitutional protections afforded all persons, and if appropriate, award to Petitioners [sic] reasonable costs and attorneys' fees including attorney's fees in compliance with the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and such other action which this Honorable Court deems just and proper.

(Docket No. 11 at 33-34).

**Respondents' Motion to Dismiss.** In their motion to dismiss, respondents assert the following. Petitioner is a native and citizen of Mexico. He filed his habeas application seeking his release from detention by the United States Immigration and Customs Enforcement ("ICE") on March 5, 2008 (Docket No. 1), but he was limited to challenging his detention and was not able to challenge the removal order entered against him. Two days later, petitioner moved for a temporary restraining order ("TRO") (Docket No. 4). The United States Attorney's Office was not served with a copy of the habeas petition or the TRO motion. Judge Kane entered a TRO on March 7, 2008, for a period of ten days (Docket No. 5), which expired on March 21, 2008. The United States Attorney's office received a facsimile of the TRO the day it was issued.

Four days later, on March 11, 2008, an Order to Answer was issued by the court. (Docket No. 9), but it was never served on the United States Attorney's Office.

Furthermore, according to the respondents, none of the named respondents was

petitioner's legal custodian, who was John Good, Acting Field Director for ICE in

Denver.  In any event, none of the named respondents was served with a copy of the

Order to Answer or other pleadings.  On April 3, 2008, petitioner filed his Amended

Memorandum (Docket No. 11), but according to respondents, it was not served at that

time.  Five days later, on April 8, 2008, petitioner was removed to Mexico.

On April 28, 2008, the United States Attorney's Office was served by certified

mail with a copy of the original Memorandum and Amended Memorandum.  On May 1,

2008, the court issued an Amended Order to Answer Within Three Days (Docket No.

13), a copy of which was served on the United States Attorney's Office on the day it was

issued.

Respondents assert that this case should be dismissed because the petitioner's

habeas petition is moot because he is no longer in the custody of ICE due to his

removal to Mexico.  They contend that in order to maintain action under 28 U.S.C. §

2241, a petitioner must be "in custody."  Furthermore, respondents assert that once a

petitioner is released, he is required to establish that a case or controversy continues to

exist.  Also, they contend that when an event occurs that precludes the court from

granting relief, the case becomes moot.  In this case, petitioner is allegedly unable to

establish that any of the exceptions set forth in Riley v. INS, 310 F.3d 1253, 1256 (10th

Cir. 2002), would preclude dismissal of this action.

**Petitioner's Response.**  Like the Amended Memorandum, petitioner's response

to the motion to dismiss is not very clear and concise, but it includes the following.  The

Department of Homeland Security ("DHS"), the Attorney General, and Executive Office

of Immigration Review have not timely responded to petitioner's arguments, nor have

they responded to the TRO. Furthermore, the United States Attorney's Office has been

given telephonic notice of every submission by petitioner.[2] With regard to the merits of

respondents' motion, petitioner asserts that "[t]he illegal removal of the Petitioner by the

DHS ICE in contact with the U.S. Attorney's office, does not make the issue of the

continuing injury done to the Petitioner moot." (Docket No. 25 at 2, ¶ 2). Petitioner cites

cases which purportedly "refute the government's claim that once having left an

immigrant can never reopen his case. All of these cases were petitioners who left and

then defended themselves from the government's argument that once extraterritorial

that they are moot and irretrievable before the U.S. judiciary." (Docket No. 25 at 4, ¶ 5).

It appears petitioner is further asserting that he is suffering collateral consequences that

preserve a live controversy even after deportation. Finally, petitioner makes reference

to the REAL ID Act that purportedly provides that district courts shall transfer pending

---

[2]More specifically, petitioner's counsel asserts:

The U.S. Attorney's Office has used the confusion arising out of the new
filing requirements for the on-line system to effectively 'stonewall' the need
for a timely response to protect the Petitioner. On every submission and
notice by Petitioner, telephonic notice has been provided to the U.S.
Attorney's office in Denver Colorado and they have not remarked upon
their non-inclusion in the Certificate of Service. This attorney made
numerous phone calls to various attorneys and have talked to a
supervisory attorney about the first filing before the Amended Complaint
and was assured that she would get back to me with a reason for the lack
of an answer. Unquestionably they have discussed the case and had
notice in fact of the arguments therein and a responsibility to respond for
the Attorney General who received a written copy of all documents as did
all the named parties.

(Docket No. 25 at 2).

habeas petitions (or the part of the case challenging a final removal, deportation, or exclusion order) to the Court of Appeals. Petitioner thus asks that "this court issue a rule [sic] upon the Respondents, officials of the DHS and the United States, ordering and directing the appropriate officials representing respondents to appear before this Court upon a date in the near future, set by this Court, to show cause why Respondents should not be required to respond to the jurisdiction of this court. **Further, upon resolution of the issues of detention, the Petitioner asserts that the remaining issues may require the automatic transfer to the Tenth Circuit in compliance with the Real ID Act.**" (Docket No. 25 at 7) (emphasis added).

**Mootness.** "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody . . . ." 28 U.S.C. § 2241(c)(1). "However, the fact that [petitioner] is no longer in custody does not automatically moot [his] petition because he was in custody at the time of filing." Riley v. INS, 310 F.3d at 1256. If he is released from custody after the petition was filed, the question is whether the petition continues to present the court with a case or controversy as required under Article III, § 2, of the United States Constitution. Spencer v. Kemna, 523 U.S. 1, 7 (1998). A constitutional prerequisite to federal court jurisdiction is that a live case or controversy must be extant at all stages of the proceedings, and it is "not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996). "[M]ootness is a matter of jurisdiction . . . ." Id. A case becomes moot if an event occurs during the pendency of the action that "makes it impossible for the court to grant any effectual relief whatever to

a prevailing party." <u>Church of Scientology of Calif. v. United States</u>, 506 U.S. 9, 12 (1992) (internal quotations omitted).  The court, however, "will not dismiss a petition as moot if (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a property certified class action suit." <u>Riley v. INS</u>, 310 F.3d at 1257 (quotations omitted).  Respondents here assert that petitioner is unable to establish that any of these exceptions would preclude dismissal of this action.

Here, petitioner essentially seeks in his Amended Memorandum his release from ICE detention and a review of the apparent reinstatement of the removal order apparently issued in 1991.  It is readily apparent that petitioner's deportation to Mexico last April renders his request for release from ICE detention moot.  <u>See</u> <u>Vaupel v. Ortiz</u>, 244 Fed.Appx. 892, 896 (10th Cir. Aug. 9, 2007) (petitioner's removal to Australia mooted his challenge to continued detention in ICE custody) (and cases cited therein); <u>Sy v. ICE</u>, 2008 WL 4372664 (D. Colo. Sept. 19, 2008) (Petitioner's release from custody rendered moot his claim for release from civil immigration detention by DHS); <u>Quacoe v. Maurer</u>, 2006 WL 2038014 (D. Colo. June 13, 2006) (Civil Action No. 06-cv-00139-LTB-PAC, Magistrate Judge's Recommendation, action dismissed July 18, 2006 - docket no. 22 in that action)(petitioner's release from detention on supervised release rendered moot his challenge to the legality of his extended detention).

With regard to the petitioner's apparent challenge to the order of removal, however, this court finds that the petitioner has shown that there may very well be collateral consequences and thus that that portion of his Amended Memorandum/

Petition/Application may not be moot. Nevertheless, "pursuant to 8 U.S.C. § 1252(a)(5) ("REAL ID Act"), authority to consider a challenge a final order of removal is within the sole and exclusive jurisdiction of the circuit courts." Sanchez v. Longshore, 2008 WL 4447062, at *2 (D. Colo. Sept. 29, 2008). "'Congress's clear intent in passing the REAL ID Act was to have all challenges to removal orders heard in a single forum: the courts of appeals.' . . . 'Thus, the present challenge is subject to the jurisdictional limitation of § 1252(a)(5).'" Id. (quoting Lin v. Chertoff, 522 F. Supp.2d 1309, 1313 (D. Colo. 2007)). This court thus does not have jurisdiction to consider the remaining arguments raised by the parties, including petitioner's claims concerning the order of removal, and whether such claims are moot.

Petitioner, in fact, recognizes the REAL ID Act. He states in his Amended Memorandum that the Act "provides that district courts 'shall' transfer pending habeas corpus petitioners (or the part of the case challenging a final removal, deportation or exclusion order) to the court of appeals in which a petition for review could have been filed (i.e. the circuit having jurisdiction over the place where the Immigration Court completed proceedings). Therefore the Tenth Circuit has all of the powers formerly relegated to the Habeas court, including the All Writs Act, should the District Court determine that the caselaw [sic] requires automatic conversion to a Petition for Review." (Docket No. 11 at 8-9). Section 106(c) of the Act,[3] however, applies to § 2241 cases

_____

[3]"Section 106(c) of the REAL ID Act provides in relevant part:

If an alien's case, brought under section 2241 of title 28 . . . and challenging a final administrative order of removal . . . is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in

pending on the date of enactment of the Act, namely, May 11, 2005, see Iasu v.

Chertoff, 426 F. Supp.2d 1124, 1127-28 (S.D. Cal. 2006), aff'd sub nom. Iasu v. Smith,

511 F.3d 881 (9th Cir. 2007), which was not the case here since this case was

commenced in 2008.  The court may, however, pursuant to 28 U.S.C. § 1631[4] "transfer

a case to a court that would have had jurisdiction on the date when the action was filed,

where the transferring court lacks jurisdiction over the case in question, and where such

a transfer would be in the interest of justice."  Berrum-Garcia v. Comfort, 390 F.3d 1158,

1162-63 (10th Cir. 2004).  These conditions are met here.

In sum, this court finds that based upon the petitioner's deportation to Mexico, his

claim concerning his detention by ICE is moot and that based upon the REAL ID Act,

this court lacks subject matter jurisdiction to consider the merits of the petitioner's claim

---

which a petition for review could have been properly filed under [8 U.S.C.
§ 1252]. . . .  The court of appeals shall treat the transferred case as if it
had been filed pursuant to a petition for review under [§ 1252], except that
subsection (b)(1) of such section [providing that petitions for review must
be filed no later than 30 days after the date of the final order of removal]
shall not apply."

Rivera-Bottzeck v. Ortiz, 241 Fed.Appx. 485, 486 n.2 (10th Cir. 2007).

[4]Section 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this
title or an appeal, including a petition for review of administrative action, is
noticed for or filed with such a court and that court finds that there is a
want of jurisdiction, the court shall, if it is in the interest of justice, transfer
such action or appeal to any other such court in which the action or appeal
could have been brought at the time it was filed or noticed, and the action
or appeal shall proceed as if it had been filed in or noticed for the court to
which it is transferred on the date upon which it was actually filed in or
noticed for the court from which it is transferred.

28 U.S.C. § 1631.

for relief with regard to the issues concerning his removal.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Petitioners [sic] Motion to Amend Memorandum in Support (Docket No. 10) is granted. It is further

**RECOMMENDED** that Respondents' Motion to Dismiss (Docket No. 14) be granted in part. More specifically, it is recommended that the petitioner's claim concerning his detention by ICE should be denied as moot. It is further recommended that the petitioner's remaining claims concerning his removal should be transferred to the United States Court of Appeals for the Tenth Circuit.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:      February 25, 2009                    s/ Michael J. Watanabe
           Denver, Colorado                     Michael J. Watanabe
                                                United States Magistrate Judge